IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| LAURNA CHIEF GOES OUT, LYNDA, FRENCH, BRANDY BURKOWSKI, and DAWN MORRIS, as next friend and natural mother of her minor son, D.M., on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | CV 12–155–M–DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| MISSOULA COUNTY, CARL IBSEN, JASON KOWALSKI, MARK FOSS, and MARK HARRIS, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

The plaintiffs filed a class action complaint on September 12, 2012. They move for class certification, which was granted on October 17, 2012. The defendants answered and have moved to set aside the certification on November 9, 2012. The motion is denied, subject to revised definitions for the class and subclass.

1

**BACKGROUND**

The named plaintiffs are inmates[1] incarcerated at the Missoula County Detention Facility and housed in Housing Unit 2 or in the Juvenile Detention Center. They claim that the defendants are unconstitutionally denying them fresh air and outdoor exercise.

The plaintiffs ask the court to certify a class consisting of:

> all current and future prisoners housed in Housing Unit 2 and the Juvenile Detention Center at the Missoula County Detention Facility for a period of one month or longer who are claiming defendants have inflicted cruel and unusual punishment by denying them fresh air and outdoor exercise.

They also ask the Court to certify a subclass consisting of:

> all female prisoners housed in Housing Unit 2 who are claiming defendants have violated their right to equal protection by denying them fresh air and outdoor exercise.

Both definitions were approved in the certification order.

**ANALYSIS**

The defendants challenge several aspects of the certification order. Those arguments fail, for the most part.

For a class to be certified, the identified group must meet each of the requirements of Federal Rule of Civil Procedure 23(a) and one of the three

---

[1] The Court uses the word "inmate" to refer to both pretrial detainees and convicted inmates when the distinction is not important.

subsections of Rule 23(b). The Supreme Court describes the Rule 23(a) requirements as follows:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class').

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Rule 23(b) then sets out the type of class actions that can be maintained. In this case the class satisfies the requirements of both Rule 23(a) and Rule 23(b).

The defendants make no argument with respect to the Rule 23(b) requirements. They challenge only the numerosity, typicality, and adequacy of representation requirements in Rule 23(a). Part of their typicality argument, though, implicates the commonality requirement so it, too, is discussed below.

### I. Numerosity

The defendants argue that the class does not meet the numerosity requirement. The response to this contention is that the class and subclass definitions should be modified, but the numerosity requirement is nonetheless satisfied in light of the fluid composition of the Detention Center facility and the inclusion of future inmates in the class.

The numerosity requirement is met when "the class is so numerous that

joinder of all parties is impractical." Fed. R. Civ. P. 23(a)(1). As this Court observed in *Alexander v. JBC Legal Group, P.C.*, 237 F.R.D. 628, 630–31 (D. Mont. 2006):

> The Ninth Circuit has vacated certification on numerosity grounds where a class consisted of ten members or less, and it has noted the Supreme Court's holding in *General Telephone Company v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), that a class consisting of fifteen members is too small to meet the numerosity requirement. *See Harik v. Cal. Teachers Ass'n,* 326 F.3d 1042, 1051 (9th Cir.2003).

That being said, a small class may still satisfy the numerosity requirement where, as here, the class includes both ascertainable members and a fluid composition of future, unidentified members. *See e.g. McMillon v. Hawaii*, 261 F.R.D. 536, 543 (D. Hawaii 2009) (finding the numerosity requirement satisfied where the putative class consisted of 10 identifiable members, as well as future, unidentified members). The Southern District of New York explained that, in the prison context: "The fluid composition of a prison population is particularly well-suited for class status, because, although the identity of the individuals involved may change, the nature of the wrong and the basic parameters of the group affected remain constant." *Dean v. Coughlin*, 107 F.R.D. 331, 332–33 (S.D.N.Y. 1985).

In the certification order, I concluded that the putative class satisfied the numerosity requirement due to the "fluid composition" of the Detention Facility

4

and "the likelihood of future, unidentified inmates who meet the class and subclass parameters." (Certification Order, doc. 11 at 4.)

The defendants take issue with the conclusion that there is a "likelihood of future, unidentified" inmates that might meet the class and subclass definitions. The defendants insist that there is no reason to believe that there is a likelihood of any future inmates meeting the plaintiffs' class and subclass definitions. The defendants claim the classes are very narrow because, according to the class definitions, the members must "claim[ ] defendants have inflicted cruel and unusual punishment by denying them fresh air and outdoor exercise." In this case defendants argue that, other than the named plaintiffs, only two other female inmates and two juveniles have ever made this claim.

This aspect of defendant's argument is well-taken. A class cannot be defined by reference to the members' subjective state of mind. *See Ries v. Ariz. Beverages USA LLC*, ___ F.R.D. ___, 2012 WL 5975247, at *2 (N.D. Cal. Nov. 27, 2012) ("An identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind."); *see also Chiang v. Veneman*, 385 F.3d 256, 271–72 (3rd Cir. 2004) ("defining a class by reference to those who 'believe' they were discriminated against undermines the validity of the class by introducing a subjective criterion into what should be an objective evaluation"), *abrogated on*

*other grounds by In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 n.18 (3rd Cir. 2008).

The Third Circuit's decision in *Chiang* is a good example. In *Chiang*, a group of plaintiffs sought class certification for persons who were "Black, Hispanic, women, and/or Virgin Islanders" who, over a period of nineteen years, believed they were discriminated against in the administration of low-income loan programs. 385 F.3d at 260. The court held that the "belief" element of the class definition was impermissibly subjective. *Id.* at 261–62. The court's solution was simple—excise the "belief" language. *Id.* at 262. The revised definition, then, referred to individuals that were, in fact, discriminated—not those who "believed" they were discriminated against. *Id.*

A court has broad discretion to modify a class definition. *See Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483 (N.D. Cal. 2011). The fix here is easy—excise the "belief" language, just as the Third Circuit did in *Chiang*. The class definition, then, will read:

> all current and future prisoners housed in Housing Unit 2 and the Juvenile Detention Center at the Missoula County Detention Center for a period of one month or longer whom the defendants deny fresh air and outdoor exercise.

And the subclass will consist of:

> all current and future female prisoners housed in Housing Unit 2 whom the defendants deny fresh air and outdoor exercise.

The defendants argue that, even if the Court modifies the definition, the class size is still too small. The defendants claim that the class size is only 18 inmates. They then point to court cases where the court held that class sizes of around 15 members is too small to meet the numerosity requirement. *See Gen. Tel. Co. of the N.W., Inc. v. Equal Empl. Opportunity Commn.*, 446 U.S. 318, 330 (1980); *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010).

Ordinarily, the plaintiffs would be correct—classes of around 15 members are generally too small to meet the numerosity requirement. *See Alexander*, 237 F.R.D. at 630–31. But, as discussed above and in the certification order, courts have also held that small classes may satisfy the numerosity requirement where, as here, the class includes both ascertainable members and a fluid composition of future, unidentified members. *See e.g. McMillon*, 261 F.R.D. at 543; *Dean*, 107 F.R.D. at 332–33; *see also Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) ("[I]n this case the constant existence of a class of persons suffering the deprivation is certain.")

Here, the plaintiffs estimate there are currently at least 18 members. Naturally, this number changes daily as the Detention Facility receives and releases inmates. As a result, the plaintiffs have included future inmates in their class and subclass definitions. To offer some perspective, the plaintiffs filed an exhibit showing that: (1) between January 1, 2012, and October 22, 2012, there

were 27 juveniles incarcerated in the Juvenile Detention Center for 30 days or more, and (2) during that same period, there were 109 female prisoners incarcerated in Housing Unit 2 for 30 days or more. (Doc. 36.) If the past is telling of the future, there will certainly be enough future class members to satisfy the numerosity requirement.

" A court must rely on simple common sense when determining whether a class size meets the numerosity requirement." *Olson v. Brown*, 284 F.R.D. 398, 407 (N.D. Ind. 2012) (citations omitted). Common sense dictates that, in light of the Detention Facility's "fluid composition" and the certainty of future inmates who meet the class and subclass definitions, the class satisfies the numerosity requirement.

## II. Typicality and Commonality

Rule 23(a)(3)—the typicality requirement—requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Similarly, Rule 23(a)(2)—the commonality requirement—requires the plaintiffs to show that "there are questions of law or fact common to the class." Both the U.S. Supreme Court and the Ninth Circuit have explained that the typicality and commonality analyses are closely related and "'tend to merge.'" *Meyer v. Portfolio Recovery Assocs., LLC*, ___ F.3d ___, 2012 WL 6720599, at *2 (9th Cir. Dec. 28, 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2551 n.5 (2011)).

At least with respect to the typicality requirement, the Ninth Circuit has held that the "claims or defenses of the representative parties" need not be identical: "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at *2 (citations and internal quotation marks omitted).

But, with respect to the commonality requirement, the U.S. Supreme Court has held: "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart*, 131 S. Ct. at 2550 (citations and internal quotation marks omitted).

The defendants argue that the class fails to meet these requirements for three reasons, but each arguments fails.

### A. Unverifiable injuries

The defendants first argue that the claims of the named plaintiffs are not typical of the class because the specific injuries—e.g., depression, anxiety, hair loss, skin problems, or other psychological and physical effects—are not verifiable. Nor is there evidence that all of the plaintiffs are suffering precisely the same types of injuries. The defendants claim that only eight inmates have ever grieved the lack of fresh air and outdoor access, so "it is possible that only eight people have experienced the negative effects that these plaintiffs are claiming."

9

(Defs.' Opening Br., doc. 20 at 9.) The defendants therefore insist that "[e]xpanding the class to include everyone who is in MCDF for more than a month does not make Plaintiffs typical of that class." The defendants' argument misses the mark for a couple reasons.

First, the defendants mischaracterize the class. The class is not defined as "everyone who is in MCDF for more than a month." The definition is much narrower: "all current and future prisoners housed in Housing Unit 2 and the Juvenile Detention Center at the Missoula County Detention Center for a period of one month or longer whom the defendants deny fresh air and outdoor exercise."

Second, and most significantly, the defendants mischaracterize the injury itself. The defendants assert that the injury is the set of negative effects that inmates experience as a result of being deprived of fresh air, direct sunlight, and outdoor exercise—i.e., depression, anxiety, hair loss, skin problems, or other psychological and physical effects. The U.S. Supreme Court, the Ninth Circuit, and other courts have long recognzied that, in prison condition cases like this one, the injury is the depravation itself, not just the negative effects resulting from the depravation. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (holding that prison officials may violate a prisoner's eighth amendment right when they deprive him of "a single identifiable human need such as food, warmth, or exercise"); *Thomas v. Ponder*, 611 F.3d 1144 (9th Cir. 2010); *Lopez v. Smith*, 203 F.3d 1122, 1133

10

(9th Cir. 2000) (en banc); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979); *Johnson v. Woodford*, 336 Fed. Appx. 594 (9th Cir. May 26, 2009); *Anderson v. Colo.*, 2012 WL 3643063, at *4 (D. Colo. Aug. 24, 2012).

The commonality and typicality question is whether the alleged depravation is common and typical throughout the class, not whether the negative effects are common and typical.

Here, the class representatives' claims—that the defendants are unconstitutionally denying them outdoor exercise—is typical of the claims of the class because the plaintiffs have defined the class precisely in terms of that claim. The commonality requirement is also satisfied because the class representatives are part of the class and "possess the same interest" and have allegedly "suffer[ed] the same injury as the class members"—namely, the depravation of fresh air and outdoor exercise. *See Wal-Mart*, 131 S. Ct. at 2550 (citations and internal quotation marks omitted).

These conclusions are consistent with the fact that other courts have certified classes of inmates claiming unconstitutional depravation of outdoor exercise, and scores of courts have certified classes of prisoners claiming other unconstitutional prison conditions. *See e.g. Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984); *Frazier v. Ward*, 426 F. Supp. 1354 (N.D.N.Y. 1977); *Martino v. Carey*, 563 F. Supp. 984 (D. Or. 1983); *Pierce v. Co. of Orange*, 526 F.3d 1190,

1211–12 (9th Cir. 2008).

### B. Pretrial detainees

The defendants also argue that the class representatives' claims are not typical of the entire class because some of the representatives are pretrial detainees, rather than convicted inmates. The defendants correctly observe that the Eighth Amendment applies to the convicted inmates' claims, while the Fourteenth Amendment applies to the pretrial detainees' claims. *See Frost v.Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). So, the defendants argue, the pretrial detainees cannot represent convicted inmates.

The plaintiffs' argument is a distinction without a difference. The class members' legal theories do not have to be "substantially identical"; they need only be "reasonably co-extensive." *Meyer*, ___ F.3d ___, 2012 WL 6720599, at *2. And, here, they are. Courts apply the same standards to pretrial detainees' claims under the Fourteenth Amendment that they apply to convicted inmates' claims under the Eighth Amendment. *Frost*, 152 F.3d at 1128.

A class's claims "must be of such a nature that [they are] capable of classwide resolution—which means that determination of [their] truth or falsity will resolve an issue that is central to each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. 2551. That is the case here. As the plaintiffs succinctly assert: "If Defendants' conduct violates pre-trial detainees' rights under the Fourteenth

Amendment, it violates convicted prisoners' Eighth Amendment rights, and vice versa." The claims of the pretrial detainees are therefore typical of the convicted inmates' claims, and vice versa.

### C. Female class representatives in Housing Unit 2

The defendants final argument concerning typicality is that the females in Housing Unit 2 cannot represent the men in Housing Unit 2. On one hand, the defendants argue, the females are claiming that they are being treated differently than the males, as explained in their equal protection claim. But on the other hand, the females are claiming that they can represent the males in terms of their cruel and unusual punishment claims. The defendants reason that the plaintiffs are attempting to have it both ways. I disagree.

The plaintiffs equal protection claim compares females in Housing Unit 2 to males in Housing Units 1 and 3. (*See* Second Amended Complaint, doc. 27 at ¶ 61.) Males in Housing Unit 2 do not enter the equal protection picture—the females in Housing Unit 2 are not, contrary to the defendants' suggestion, claiming that they are being treated differently than males in Housing Unit 2. The females claim that they are being treated the same as males in Housing Unit 2—the defendants are denying both groups fresh air and outdoor exercise. The females claim only that they are being treated differently than males in Housing Units 1 and 3. So there is no conflict. Females in Housing Unit 2 can represent

males in Housing Unit 2 with respect to the cruel and unusual punishment claims. And they can, at the same time, represent themselves as a subclass with respect to their equal protection claim, which compares females in Housing Unit 2 to males in Housing Units 1 and 3.

For these reasons, as well as the reasons in the certification order, both the typicality and commonality requirements are satisfied.

### III.   Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." There are two issues to consider in determining adequacy of representation:

> (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citation omitted).

The defendants claim the plaintiffs fail to satisfy this requirement because "[t]here are no longer any detained representatives in the class." The defendants' argument fails. An inmate may adequately represent a class that includes future inmates, even if the inmate is released or transferred prior to class certification:

> That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction. We recognized in *Gerstein* that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399,

14

> 100 S. Ct. 1202, 1210, 63 L. Ed. 2d 479 (1980), citing *Gerstein*, *supra*, 420 U.S., at 110, n. 11, 95 S. Ct., at 861, n. 11. In such cases, the "relation back" doctrine is properly invoked to preserve the merits of the case for judicial resolution. *See Swisher v. Brady*, 438 U.S. 204, 213–214, n. 11, 98 S. Ct. 2699, 2705 n. 11, 57 L. Ed. 2d 705 (1978); *Sosna*, *supra*, 419 U.S., at 402, n. 11, 95 S. Ct., at 559, n. 11.

*Co. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991); *see also U.S. Parole Commn. v. Geraghty*, 445 U.S. 388, 404 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997); *Riggs v. Valdez*, 2010 WL 4117085, at *2–*3 (D. Idaho Oct. 18, 2010).

Here, the class is "inherently transitory," such that an exception to the mootness doctrine applies and the class representatives' standing relates back to the filing of the complaint. *See e.g. Guschausky v. Am. Family Life Assur. Co. of Columbus*, 2011 WL 1897183 (D. Mont. May 10, 2011). As the filings in this case have shown, the inmate population at the Detention Facility is in constant flux, changing on a daily basis. Just as in *Gerstein*: "It is by no means certain that any given individual, named as a plaintiff, would be in pretrial custody [or postrial custody, for that matter] long enough for a district judge to certify the class." 420 U.S. at 110 n.11.

The class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4)

## CONCLUSION

The defendants' motion to set aside is denied. The class satisfies the

15

requirements of both Rule 23(a) and Rule 23(b). However, the class is modified in its definitions, as described above.

IT IS ORDERED that the defendants' motion to set aside class certification (doc. 17) is DENIED.

IT IS FURTHER ORDERED that the class and subclass definitions are modified as follows:

**Class definition**

> all current and future prisoners housed in Housing Unit 2 and the Juvenile Detention Center at the Missoula County Detention Center for a period of one month or longer whom the defendants deny fresh air and outdoor exercise.

**Subclass definition**

> all current and future female prisoners housed in Housing Unit 2 whom the defendants deny fresh air and outdoor exercise.

Dated this 10th day of January 2013.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT